UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NATHANIEL DARRON JENKINS,

        Petitioner,

                               CASE NO. 2:11-CV-12433

  v.                          JUDGE SEAN F. COX

                               MAGISTRATE JUDGE PAUL J. KOMIVES

GREG McQUIGGIN,

        Respondent.

_____/


# REPORT AND RECOMMENDATION

*Table of Contents*

| | | |
|---|---|---|
| I. | RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| II. | REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| | A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| | B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| | C.   *Exhaustion and Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| | D.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |
| | E.   *Prosecutorial Misconduct (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| |     1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| |     2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| |         a. Shifting Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| |         b. Questioning About Credibility of Witnesses . . . . . . . . . . . . . . . . . . . . . . . | 20 |
| |         c. Injecting Issues Broader than Guilt  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
| |         d. Vouching and Expressing Personal Belief . . . . . . . . . . . . . . . . . . . . . . . . . | 23 |
| | F.   *Ineffective Assistance of Counsel (Claims I & III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |
| |     1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |
| |     2.   *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 26 |
| |         a. Failure to Object to Prosecutorial Misconduct . . . . . . . . . . . . . . . . . . . . . | 27 |
| |         b. Failure to Request Consent Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . | 27 |
| |         c. Failure to Investigate and Present Witnesses . . . . . . . . . . . . . . . . . . . . . . . | 30 |
| |     3.   *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 32 |
| | G.   *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . | 33 |
| |     1.   *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 33 |
| |     2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 34 |
| | H.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 35 |
| III. | NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 35 |

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     <u>REPORT</u>:

A.      *Procedural History*

        1.      Petitioner Nathaniel Darron Jenkins is a state prisoner, currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan.

        2.      On March 21, 2006, petitioner was convicted of one count of first degree criminal sexual conduct (CSC-I) under two different theories (sexual penetration while armed with a weapon and sexual penetration and causing personal injury to the victim), MICH. COMP. LAWS § 750.520b(1)(e), (f); one count of possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f; two counts of felonious assault, MICH. COMP. LAWS § 750.82; one count of possession of marijuana, second offense, MICH. COMP. LAWS § 333.7413(2); one count of possession of less than 25 grams of cocaine, MICH. COMP. LAWS § 333.7403(2)(a)(v); and three counts of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Oakland County Circuit Court.  On April 12, 2006, he was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to concurrent terms of 40-60 years' imprisonment on the CSC-I conviction, 5-20 years' imprisonment on the felon in possession conviction, 5-15 years' imprisonment on each of the assault and cocaine convictions, and time served on the marijuana conviction, all consecutive to a mandatory term of two years' imprisonment on the felony-firearm conviction.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

     I.     DEFENDANT-APPELLANT IS ENTITLED TO A NEW TRIAL WHERE THE PROSECUTOR IMPROPERLY COMMENTED ON DEFENDANT'S FAILURE TO CALL WITNESSES WHICH IMPROPERLY SHIFTED THE BURDEN OF PROOF TO DEFENDANT.

     II.     DEFENDANT-APPELLANT IS ENTITLED TO A NEW TRIAL WHERE HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.

The court of appeals found no merit to petitioner's claims, and affirmed his convictions and sentences. *See People v. Jenkins*, No. 270013, 2007 WL 1687462 (Mich. Ct. App. June 12, 2007) (per curiam).

     4.     Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. Petitioner also asserted an additional claim that appellate counsel was ineffective for failing to properly support his first claim. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Jenkins*, 480 Mich. 924, 739 N.W.2d 873 (2007).

     5.     Petitioner subsequently filed a *pro se* motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

     I.     DEFENDANT JENKINS WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF APPELLANT [sic] COUNSEL. APPELLANT [sic] IS REVIEWED THROUGH THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION. HOWEVER, INEFFECTIVE ASSISTANCE OF COUNSEL IS IN DEFENDANT'S SIXTH AMENDMENT RIGHT ALSO. VIOLATING U.S. CONSTITUTIONAL AMENDMENT VI AND XIV. ALSO IN THIS BRIEF CAUSE AND PREJUDICE HAVE BEEN DEMONSTRATED.

     II.     DEFENDANT JENKINS WAS DENIED A FAIR TRIAL, FUNDAMENTAL/FEDERAL DUE PROCESS WHEN THE PROSECUTOR IMPROPERLY CROSS-EXAMINED HIM ON THE CREDIBILITY OF OTHER (PROSECUTION) WITNESSES AND WHETHER THEY ALL WERE/HAD TO BE MAKING FALSE STATEMENTS. U.S. CONST AM V AND XIV. ALTERNATIVELY, IF TRIAL COUNSEL'S FAILURE TO OBJECT OR PROPERLY OBJECT IS

THE REASON FOR THIS COURT'S NOT REVERSING (ON CONSTITUTIONAL GROUNDS OR OTHERWISE), THEN BASED ON COUNSEL'S FAILURE TO PROPERLY OBJECT TO THIS IMPROPER QUESTIONING HE WAS INEFFECTIVE AND DEFENDANT WAS DENIED HIS FEDERAL DUE PROCESS IN THIS RESPECT (FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION) AND A MISCARRIAGE OF JUSTICE RESULTED.

III.   MR. JENKINS WAS DEPRIVED OF A FAIR TRIAL BY THE REPEATED STATEMENTS MADE IN CLOSING SUMMATION, AS VOUCHING FOR WITNESSES, ISSUES BROADER THAN GUILT AND INNOCENCE, INTERJECTING PERSONAL BELIEF, PLAYING ON THE JURY'S EMOTIONS, AND MAKING INTERJECTIONS NOT SUPPORTED BY THE EVIDENCE.   THIS IS SHOWING PROSECUTORIAL MISCONDUCT.  IN ALTERNATE [sic], TRIAL COUNSEL WAS INEFFECTIVE FOR THE FAILURE TO OBJECT TO THE OFFENDING COMMENTARY PRESENTED BY THE PROSECUTOR.   VIOLATIONS OF U.S. CONSTITUTIONAL AMENDMENTS V AND XIV.

IV.   THE GREAT WEIGHT OF THE EVIDENCE PRESENTED WAS INSUFFICIENT TO ESTABLISH BEYOND A REASONABLE DOUBT THAT THE DEFENDANT, MR. JENKINS, WAS GUILTY OF THE CURRENT CHARGES.  ALSO BECAUSE OF THE TRIAL COUNSEL'S NEGLECT IN PRODUCING WITNESSES FOR SUPPORT OF THE DEFENDANT'S STAND.   TRIAL COUNSEL FAILED TO CALL NECESSARY WITNESSES, IN DOING SO FAILED TO SUPPORT THE DEFENSE INTRODUCED BY DOING THIS TESTING THE CREDIBILITY OF THE PROSECUTION'S WITNESSES.  THERE NOW HAS BEEN A MISCARRIAGE OF JUSTICE IN THE INSTANT CASE, A CLEAR VIOLATION OF DEFENDANT'S XIV AMENDMENT RIGHTS.

V.   MR. JENKINS'S CONVICTION SHOULD BE REVERSED BECAUSE THE PROSECUTOR'S CASE WAS THE PRODUCT OF AND PREDICATED UPON A PATTERN OF ILLEGAL POLICE CONDUCT WHICH IMPLICATES RELIABILITY AND DUE PROCESS UNDER THE UNITED STATE'S CONSTITUTIONS FIFTH AND FOURTEENTH AMENDMENT.

VI.   DEFENDANT WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS BY THE CUMULATIVE EFFECT OF THE CONSTITUTIONAL ERRORS THAT OCCURRED AT HIS TRIAL.

4

On December 11, 2008, the trial court denied petitioner's motion for relief from judgment,

concluding that petitioner's third and seventh claims[1] were previously raised and decided on appeal

and therefore barred by MICH. CT. R. 6.508(D)(2), and that the remaining claims were barred

because petitioner failed to raise them on direct appeal and failed to establish actual prejudice as

required by MICH. CT. R. 6.508(D)(3).  *See People v. Jenkins*, No. 05-204037-FC (Oakland County,

Mich., Cir. Ct. Dec. 11, 2008).  On the following day, December 12, 2008, petitioner filed a motion

to supplement his motion for relief from judgment, raising five additional claims:

I.    MR. JENKINS WAS DENIED A FAIR TRIAL BY TRIAL COUNSEL. COUNSEL NEVER REQUESTED THE READING OF THE MISSING WITNESS INSTRUCTION, WHERE OFFICER RIVERA WAS NOT AT TRIAL TO TESTIFY, HOWEVER, HE WAS LISTED AND ENDORSED. THERE WAS A GREAT DEAL OF TESTIMONY AROUND THIS OFFICER. THE TRIAL JUDGE ALSO ABUSED ITS DISCRETION IN WHERE THE EVIDENCE WAS PRESENTED ABOUT THE POSSIBLE TESTIMONY OF OFFICER RIVERA. TRIAL COUNSEL WAS ALSO INEFFECTIVE FOR THE FAILURE TO CALL VITAL WITNESSES TO SUPPORT THE DEFENSE'S THEORY. VIOLATIONS OF HIS FIFTH, SIXTH AND FOURTEENTH AMENDMENT. [sic]

II.   DEFENDANT'S SENTENCE IS UNCONSTITUTIONAL, AND MR. JENKINS IS WARRANTED TO BE ORDERED BACK FOR RESENTENCING, BECAUSE THE TRIAL COURT INCREASED THE STATUTORY SENTENCING GUIDELINES RANGE BASED ON FACTS THAT WERE NOT ADMITTED BY DEFENDANT, ALSO NOT SUPPORTED BY EVIDENCE AND AR NOT BASED ON FACTS THAT WERE PROVEN TO A JURY BEYOND A REASONABLE DOUBT. VIOLATIONS OF U.S. CONST AM VI, XIV.

III.  DEFENDANT JENKINS WAS DENIED A FAIR TRIAL, WHERE THE PROSECUTOR IMPROPERLY COMMENTED ON DEFENDANT'S FAILURE TO CALL WITNESSES WHICH IMPROPERLY SHIFTED THE BURDEN OF PROOF TO THE DEFENDANT. NOW THERE IS A CLAIM OF INEFFECTIVE ASSISTANCE OF APPELLANT [sic]

---

[1]The trial court interpreted petitioner's motion to raise a seventh claim, asserting ineffective assistance of counsel based on counsel's failure to investigate, prepare, file motions, and raise objections.

COUNSEL FOR RAISING THIS ISSUE WITHOUT ANY CONSTITUTIONAL LAW OR PROVISIONS, OR EVEN FEDERAL CASE LAW FOR THE MATTER, VIOLATION OF MR. JENKINS' V, VI AND XIV AMENDMENTS [sic] OF THE UNITED STATES CONSTITUTION.

IV.     THE TRIAL COURT HAS ERRED IN ENHANCING THE CURRENT SENTENCE WITH PRIOR CONVICTIONS, WHICH ARE IN A DIRECT VIOLATION OF THE PRINCIPLES OF THE CASE IN <u>HALBERT V. MICHIGAN</u>, 545 U.S. 605 (2005). THE ENHANCED SENTENCE AND THE SCORING OF THE PRIOR OFFENSE VARIABLES ARE IN THE FORM OF A HALBERT VIOLATION. THEREFORE, THE ENHANCEMENT AND PRV'S ARE ASSESSED UNCONSTITUTIONALLY AND WOULD BE DEEMED AS A STRUCTURAL ERROR.

V.      MR. JENKINS WAS DENIED A FAIR TRIAL BY A PORTION OF HIS DEFENSE WAS CONSENT ON THE ALLEGED COMPLAINANT'S PART, THEREFORE THE CJI2d 20.27 INSTRUCTION WAS NECESSARY TO BE READ FOR THE FACT EVIDENCE WAS INTRODUCED OF CONSENT. COUNSEL WAS INEFFECTIVE FOR THE FAILURE TO REQUEST THIS INSTRUCTION.

It does not appear from the record that the trial court ruled on petitioner's motion to supplement.

6.     Petitioner, proceeding *pro se*, filed an application for leave to appeal in the Michigan Court of Appeals, raising the eleven claims that he had raised in his initial and supplemental motions. The court of appeals denied petitioner's application in a standard order, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Jenkins*, No. 295375 (Mich. Ct. App. Mar. 8, 2011).

7.     Petitioner, through counsel, sought leave to appeal in the Michigan Supreme Court, raising the following claims:

I.      DEFENDANT NATHANIEL DARRON JENKINS IS ENTITLED TO RELIEF FROM JUDGMENT BASED UPON INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BOTH AS A SUBSTANTIVE CLAIM AND AS A DEFENSE TO PROCEDURAL BARS.

II.     DEFENDANT JENKINS' SENTENCE WAS IMPOSED CONTRARY TO THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

III.    DEFENDANT JENKINS IS ENTITLED TO RELIEF FROM JUDGMENT BASED UPON INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL BOTH AS A SUBSTANTIVE CLAIM AND AS A DEFENSE TO PROCEDURAL BARS.

The Michigan Supreme Court denied petitioner's application for leave to appeal in a standard order, based on petitioner's "fail[ure] to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Jenkins*, 488 Mich. 1045, 794 N.W.2d 596 (2011).

8.    Petitioner, through counsel, filed the instant application for a writ of habeas corpus on June 6, 2011. As grounds for the writ of habeas corpus, he raises the two ineffective assistance of counsel claims as raised in the Michigan Supreme Court on his motion for relief from judgment, and a claim that he was denied a fair trial by prosecutorial misconduct.

9.    Respondent filed his answer on December 13, 2011. He contends that a portion of petitioner's ineffective assistance of trial counsel claim is unexhausted (Claim I(d), alleging ineffective assistance based on counsel's failure to request a consent instruction); another portion of petitioner's trial counsel claim is without merit (Claim I(e), alleging ineffective assistance based on counsel's failure to investigate and present witnesses); and the remainder of petitioner's claims are barred by petitioner's procedural default in the state courts and are without merit.

10.    Petitioner filed a reply to respondent's answer on January 27, 2012.

B.    *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was accurately summarized by the Michigan Court of Appeals on petitioner's direct appeal:

Defendant's convictions arise from incidents at the victim's apartment on

7

July 21 and 22, 2005. The victim testified that she met defendant at a club earlier in the year. In May or June 2005, defendant started staying in her apartment. He obtained a copy of the victim's apartment key, without the victim's knowledge. He threatened to harm her, and to find and harm her family, when she asked him to leave. On July 21, 2005, defendant became upset because the victim planned to go out of town for a modeling job. He yelled at the victim, slapped her in the face, and cut her collarbone with a knife. Defendant was also armed with a gun. The victim followed his instruction to go into the bedroom because she was afraid. Defendant penetrated her vagina with his penis and had the victim perform oral sex on him in the bedroom. On the next day, the victim made a report at the Southfield police station, but was reluctant to pursue the matter. Detective Damiso Davis drove the victim to her apartment. The victim expected to find defendant's sister waiting to do her hair, but only defendant was present. Defendant ordered the victim to take off her pants and smelled her private area to try to determine whether she had sex with the person who dropped her off. He banged his gun against her head, leaving a mark on her forehead.

Detective Davis testified that he was dressed in plain clothes and used an unmarked police vehicle to drive the victim to the apartment building. After driving off and reading the report that the victim wrote at the police station, he decided to go to the victim's apartment. Defendant opened the apartment door. The victim stood behind the door, crying and naked from the waist down. During a pat down search of defendant, Detective Davis found a gun in his back waistband. Cocaine and marijuana were discovered during a search of the apartment. According to the victim, the drugs belonged to defendant.

Defendant testified that he paid the victim for the use of her apartment to conduct drug transactions in July 2005, but did not have a key or reside there. On July 19, 2005, defendant told the victim that he was leaving the state and would not be coming back. On July 21, 2005, defendant went to the apartment to get approximately $13,000 of his money. He passed out after smoking marijuana and having consensual oral sex with the victim. On the next day, he gave the victim money to buy clothes. Defendant would have left, except that the victim phoned him to request that his sister come over to do her hair. Defendant's sister left the apartment before the victim returned with a visible bruise on her head. Detective Davis came to the apartment and drew a gun on him. He did not identify himself as a police officer until after a tenant walked by. Defendant believed that the victim and Detective Davis wanted his money. He did not know what happened to the money after he was arrested. He denied having a gun, but claimed that his friend, Dexter Chris, gave a gun to the victim.

*Jenkins*, 2007 WL 1687462, at *1–*2.

C.    *Exhaustion and Procedural Default*

Respondent contends that petitioner's claim alleging ineffective assistance of counsel based

8

on counsel's failure to request a consent instruction is unexhausted.  That claim was first raised in

petitioner's motion to supplement to his motion for relief from judgment.  Respondent argues that,

because the motion to supplement was filed after the trial court denied the motion for relief from

judgment, the claim was never considered by the trial court, and thus is not exhausted.  Petitioner

counters that although the trial court denied the motion for relief from judgment on December 11,

2008, it re-entered its opinion on December 12, the date it received the motion.  Petitioner argues

that it did so to account for the motion to supplement that the trial court received on December 12.

Petitioner's argument is questionable, however, because the trial court gave no indication that it re-

entered its order to account for the motion to supplement, and the order did not mention the motion

to supplement in any way.[2]  Nevertheless, the Court need not resolve this issue.  Exhaustion is not

jurisdictional, and thus despite the exhaustion requirement a habeas petition "may be *denied* on the

merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts

of the State."  28 U.S.C. § 2254(b)(2) (emphasis added).  A federal court may decide a habeas

---

[2]Petitioner also contends that the motion to supplement should be considered to have been filed
before the trial court at the time it ruled on petitioner's motion for relief from judgment pursuant
to the prison mailbox rule.  In *Houston v. Lack*, 487 U.S. 266, 270 (1988), the Supreme Court held that,
under Rule 4 of the Federal Rules of Appellate Procedure, a *pro se* prisoner's appeal should be deemed
"filed" on the date it is given to prison officials for mailing.  *See Houston*, 487 U.S. at 275-77.  The rule
of *Houston* has since been extended to other filings by prisoners.  *See, e.g.*, *Beckovich v. Coyle*, 22 F. Supp.
2d 722, 723-24 (N.D. Ohio 1998) (discussing cases).  However, *Houston* and the subsequent cases
extending the rationale of *Houston* were decided as matters of interpretation of various federal rules and
statutes.  The rule of *Houston* does not rest on constitutional grounds, and thus a state is not required
to adopt the prison "mailbox rule."  *See Adams v. LeMaster*, 223 F.3d 1177, 1182 n.4 (10th Cir. 2000).
Although Michigan has now adopted the prison mailbox rule with respect to notices of appeal and
applications for leave to appeal, that rule applies only to notices and applications filed after March 1,
2010.  *See* MICH. CT. R. 7.204(A)(2)(e), 7.304(C)(3).  At the time of petitioner's motion for relief from
judgment, the Michigan courts expressly rejected the mailbox rule of *Houston*.  *See Moore v. Michigan
Department of Corrections*, 615 N.W.2d 212, 212-13 (Mich. 2000) (Corrigan, J., concurring in denial of leave
to appeal); *Walker-Bey v. Department of Corrections*, 222 Mich. App. 605, 608-11, 564 N.W.2d 171, 172-73
(1997).

petition on the merits when the grounds for relief are without merit or are not cognizable on habeas review. *See Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991); *Prather v. Rees*, 822 F.2d 1418, 1421-1422 (6th Cir. 1987). As explained below, petitioner's claim that counsel was ineffective for failing to request a consent instruction is without merit, and the Court should therefore deny the claim on that basis rather than resolving the complicated exhaustion issue.

Petitioner also claims that the bulk of petitioner's claims are barred by petitioner's procedural default in the state courts. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Petitioner's second claim alleging prosecutorial misconduct, is barred by petitioner's procedural default because petitioner failed to object to the alleged prosecutorial misconduct at trial. In rejecting petitioner's prosecutorial misconduct claim, the Michigan Court of Appeals expressly

held that, because petitioner failed to object at trial, the claim was reviewable only for plain error. *See Jenkins*, 2007 WL 1687462, at *2. The contemporaneous objection rule upon which the Michigan Court of Appeals relied is firmly established. *See, e.g.*, *People v. Duncan*, 402 Mich. 1, 15-16, 260 N.W.2d 58, 61-62 (1977); *People v. Curry*, 175 Mich. App. 33, 39, 437 N.W.2d 310, 314 (1989). Because the state court clearly and expressly relied on this state procedural rule with respect to petitioner's prosecutorial misconduct claims, they are procedurally defaulted and review is barred absent a showing of either cause and prejudice or a fundamental miscarriage of justice. *See Engle v. Isaac*, 456 U.S. 107, 125-129 (1982) (state contemporaneous objection rule is adequate procedural bar precluding consideration of habeas claims). This is so even through the court of appeals reviewed the merits of the claims in determining whether petitioner could establish plain error. *See White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005) ("[P]lain error review by the state court does not constitute a waiver of procedural default rules.").

Petitioner's other claims that were raised for the first time in petitioner's motion for relief from judgment are likewise procedurally defaulted. The Michigan Court of Appeals and the Michigan Supreme Court both rejected petitioner's appeal based on his "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." The Sixth Circuit has held that the form orders used by the Michigan courts constitute unexplained orders which are ambiguous as to whether a procedural bar is being invoked, and thus a federal habeas court must "look through" these orders to the last reasoned state court judgment to determine if the claims are barred. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Here, the trial court clearly invoked Rule 6.508(D)(3) in rejecting petitioner's claims. In doing so, however, the trial court discussed the merits of each claim, finding only that petitioner could not establish prejudice because the claims

11

were without merit.  The trial court did not discuss good cause at all.  Petitioner argues that because

the trial court considered only the merits of his claims, and did not address cause, the trial court did

not invoke a procedural bar.  This argument is without merit.  The procedural bar set forth in the rule

is the bar with respect to claims that could have been raised on direct appeal.  This bar is established

by the opening paragraph of Rule 6.508(D)(3).  Subparagraphs (a) and (b) merely establish two

prongs of an exception to the procedural bar imposed by the opening proviso of paragraph (D)(3).

In invoking Rule 6.508(D)(3), the trial court clearly and expressly relied on this procedural bar.  The

court's further discussion of the merits merely went to whether petitioner could satisfy an exception

to that procedural bar.  Thus, the claims are defaulted.

Nevertheless, notwithstanding petitioner's default it is necessary to consider the merits of

petitioner's claims.  With respect to each claim petitioner raises, he contends that either trial or

appellate counsel was ineffective, and he makes these contentions both as independent grounds for

relief and as cause to excuse his procedural default.  If petitioner's position is correct, counsel's

ineffectiveness may constitute cause to excuse any procedural default.  *See Edwards v. Carpenter*,

529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Consideration of counsel's

effectiveness, however, depends in part on consideration of petitioner's underlying claims.  Given

that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted

claims, it is better to simply consider the merits of these claims, even if they are defaulted.  *See*

*Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d

824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of

petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.     *Standard of Review*

12

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.

However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.  As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).  Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last

14

state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

The deferential standard of § 2254(d)(1) applies to petitioner's prosecutorial misconduct claims alleging that the prosecutor improperly shifted the burden of proof.  Those claims, although ultimately rejected based on petitioner's failure to object, were also considered on the merits.  Petitioner's prosecutorial misconduct claims were reviewed by the Michigan Court of Appeals for plain error.  The Sixth Circuit has "squarely endorsed the view that 'a federal constitutional claim reviewed by a state court for "plain error" can be considered "adjudicated on the merits" for the purpose of receiving deference under AEDPA.'"  *Bond v. McQuiggan*, ___ Fed. Appx. ___, ___, 2012 WL 5951492, at * (6th Cir. Nov. 29, 2012) (quoting *Fleming v. Metrish*, 556 F.3d 520, 532

(6th Cir. 2009)).  Likewise, the deferential standard of review applies to petitioner's ineffective assistance of trial counsel claims based on counsel's failure to object to the alleged prosecutorial misconduct and counsel's failure to call witnesses, as these claims were considered and rejected on the merits by the Michigan Court of Appeals on petitioner's direct appeal.  The remainder of petitioner's prosecutorial misconduct and ineffective assistance of counsel claims, however, were not adjudicated on the merits by the Michigan courts, and thus these claims are subject to *de novo* review.  *See Dando v. Yukins*, 461 F.3d 791, 796 (6th Cir. 2006).

E.      *Prosecutorial Misconduct (Claim II)*

Petitioner first contends that the prosecutor committed egregious misconduct that denied him a fair trial.  Specifically, petitioner contends that the prosecutor improperly: (1) shifted the burden of proof during cross-examination of petitioner; (2) questioned him about the credibility of prosecution witnesses; (3) injected issues broader than guilt or innocence; and (4) vouched for the witnesses and expressed his personal belief in petitioner's guilt.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Id.* (internal quotation omitted).  *Darden* constitutes "[t]he 'clearly established Federal law' relevant" to a prosecutorial misconduct claim.  *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the

prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case-determinations.'" *Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In reviewing whether prosecutorial comments deprived a defendant of a fair trial, a court may not consider the remarks in isolation, but must consider the remarks in the context of the entire trial, including the prosecutor's appropriate comments, the court's instructions to the jury, and the evidence presented in the case. *See Brown v. Payton*, 544 U.S. 133, 144 (2005); *United States v. Young*, 470 U.S. 1, 11 (1985); *Donnelly v. DeChristoforo*, 416 U.S. 636, 645 (1974). Even on direct review, where AEDPA deference does not apply, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *Young*, 470 U.S. at 11. As noted above, although all of petitioner's prosecutorial misconduct claims are viewed through the lens of *Darden*, only his claims relating to the prosecutor shifting the burden of proof are entitled to additional deference under § 2254(d)(1).

    2.    *Analysis*

### *a. Shifting Burden of Proof*

Petitioner contend that the prosecutor impermissibly shifted the burden of proof during the prosecutor's cross-examination of petitioner and during closing argument. During direct examination, in support of his claim that the charges were fabricated by the victim and Detective Davis in order to steal his money, petitioner testified that: (1) he paid the victim for sex, *see* Trial Tr., dated 3/17/06, at 54; (2) he had a friend, D.C., give the victim a gun some time prior to sexual assaults, *see id*. at 62; (3) he kept a large sum of money in the victim's apartment and the money was unaccounted for after his arrest, *see id*. at 63-64, 69, 125; and (4) Davis, at the time of the arrest,

17

ordered him to the floor at gunpoint while the victim encouraged Davis to shoot him, and it was only

when a tenant passed by in the hallway that Davis identified himself as a police officer, *see id*. at

70-72.  Probing these assertions on cross-examination, the prosecutor asked petitioner questions

about the evidence he had to support his claims.  *See id*. at 93-94 (asking whether "D.C [is] here

today" to corroborate his testimony regarding giving the victim a gun); *id*. at 100 (asking whether

petitioner had "any corroboration that this money even existed."); *id*. at 120 (asking, "And your

alleged friend, who gave Jennifer the gun, he's not here, right?," and "you have no evidence that this

money even existed, correct?"); *id*. at 121 (asking, "You didn't try to find the tenant at the

apartment, correct?" and "Your sister did not come in to corroborate . . ."); *id*. at 122 (asking again

whether petitioner had any proof that the money existed, and "no proof there was any relationship

between Detective Davis and [the victim]?").  During closing argument the prosecutor reiterated

several times that petitioner had no evidence to support the claims made during his testimony.  *See*

Trial Tr., dated 3/20/06, at 17-19.

The Michigan Court of Appeals rejected petitioner's claim that the prosecutor's cross-

examination improperly shifted the burden of proof, reasoning:

> Here, examined in context, the prosecutor's cross-examination of defendant
> regarding whether he had witnesses or other proofs to support his testimony
> constituted a proper inquiry into the credibility of his testimony. The prosecutor did
> not call upon defendant to prove his innocence or disprove any elements of the
> charged offenses, but rather explored the weakness of defendant's version of events.
> Therefore, defendant has not established his claim of a burden-shifting error.
> Further, . . . [a]bsent an objection, the trial court's instructions to the jury that
> '[d]efendant is not required to prove his innocence or do anything' and that the
> 'prosecutor must prove each element of the crimes charged beyond a reasonable
> doubt' were sufficient to dispel any perceived prejudice."

*Jenkins*, 2007 WL 1687468, at *2.  The court also rejected petitioner's claim that the prosecutor's

closing argument comments improperly shifted the burden of proof, explaining:

18

> The prosecutor argued that there were two versions of the events and that defendant's version was fabricated.  The prosecutor's remark that defendant did nothing to corroborate his story and could not do so because the story was not true did not shift the burden of proof to defendant.  The prosecutor was free to comment on the weakness of defendant's defense and challenge the credibility of defendant's testimony based on the evidence.

*Id*. at *3.  Because these determinations were reasonable, petitioner is not entitled to habeas relief on this claim.

A prosecutor may comment on a defendant's failure to call witnesses or offer other evidence to support his factual theories so long as the prosecutor's comment does not implicate a defendant's right not to testify.  *See United States v. Bautista*, 23 F.3d 726, 733 (2d Cir. 1994); *United States v. Williams*, 990 F.2d 507, 510 (9th Cir. 1993); *United States v. Sensi*, 879 F.2d 888, 900 (D.C. Cir. 1989); *United States v. Dahdah*, 864 F.2d 55, 59 (7th Cir. 1988).  The prosecutor's questions and comments did not implicate petitioner's right not to testify, as petitioner in fact testified.  It is well "established that the government may comment on a defendant's failure to call witnesses to support his factual theories."  *Bautista*, 23 F.3d at 733; *accord United States v. Robles-Vertiz*, 155 F.3d 725, 731 (5th Cir. 1998).  Here, the prosecutor's questions and comments did not "suggest[] to the jury that the petitioner was obligated to prove his innocence.  Rather, [they suggested] that the petitioner's . . . testimony was unsupported and not worthy of belief.  Thus, the prosecutor's [questions] did not shift the burden of proof to the defense and did not violate the petitioner's constitutional rights."  *March v. Bock*, No. 00-CV-10495, 2003 WL 21488691, at *8 (E.D. Mich. June 12, 2003) (Lawson, J.).  Further, "any possible prejudice which might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof."  *Stewart v. Booker*, No. 07-14081, 2009 WL 973343, at *5 (E.D. Mich. Apr. 9, 2009) (Cohn, J.) (citing *Scott v. Elo*, 302 F.3d 598, 603-04 (6th Cir.2002)).  Accordingly, the Court should conclude that petitioner

is not entitled to habeas relief on this claim.

### b. Questioning About Credibility of Witnesses

Petitioner next contends that the prosecutor improperly questioned him about the credibility of other witnesses. Specifically, the prosecutor asked petitioner the following questions:

- "The general dynamics, the general setup of this relationship [the victim] explained that you were attempting to intimidate her, threatening to hurt her family, threatening to hurt her. Are you telling us that's not true?" Trial Tr., dated 3/17/06, at 91.

- "It's your basic theory, sir, that Ms. Koutsimbas is not telling the truth, right?," "Detective Davis is not telling the truth?," "The other police officers who responded on the scene are not telling the truth?" *Id.* at 99-100.

The Court should conclude that petitioner was not denied a fair trial by these questions.

It is true that a number of courts, both state and federal, have held that it is improper for a prosecutor to ask a witness to testify about the veracity of another witness. *See United States v. Sanchez*, 176 F.3d 1214, 1219-20 (9th Cir. 1999) (citing cases); *United States v. Sullivan*, 85 F.3d 743, 749-50 (1st Cir. 1996); *United States v. Montalvo*, 20 F. Supp. 2d 270, 277-78 (D.P.R. 1998) (citing cases). All of these cases–again, both state and federal–however, were direct appeal cases in which the courts exercise supervisory powers over both the trial courts and prosecutors. A federal habeas court has no such supervisory powers over state courts or state prosecutors. *See Murphy v. Florida*, 421 U.S. 794, 797 (1975). Petitioner has cited, and I have found, no cases either applying this rule in a habeas corpus case or holding that questions of this type generally amount to a denial of due process, as is required for habeas relief. Thus, it is at a minimum questionable whether the rule upon which petitioner relies applies here. *See Zemina v. Solem*, 438 F. Supp. 455, 465 (D.S.D. 1977) (rejecting petitioner's claim based upon prosecutorial misconduct, noting that "[i]f . . . this were a matter of a direct appeal from a conviction in federal court, there might be reversible error.

20

The test in a habeas corpus proceeding, however, is more demanding[.]"), *aff'd*, 573 F.2d 1027 (8th Cir. 1978); *cf. Brecht v. Abrahamson*, 507 U.S. 619, 633, 634 (1993) (noting that "[t]he principle that collateral review is different from direct review resounds throughout our habeas jurisprudence," and that "[r]ecognizing the distinction between direct and collateral review, we have applied different standards on habeas than would be applied on direct review with respect to [various] matters[.]").

Moreover, in the circumstances of this case petitioner cannot show that the prosecutor's questions, even if improper, deprived him of a fair trial.  It was clear from petitioner's own testimony that he believed the victim and Davis were lying in an attempt to obtain his money, and petitioner directly contradicted the testimony of the victim and Davis on every material point at issue.  Based on petitioner's direct examination testimony, the jury could have come to no other conclusion than that petitioner believed the victim and Davis were lying in their testimony.  In other words, "the questions came after petitioner had provided his own account . . . , one which differed in important respects from that provided by the prosecution witnesses; the context of the questions, then, was the prosecutor's attempt to underscore the differences in the accounts for the jury. . . . [Thus], the questions only made explicit what was implicit in petitioner's testimony."  *Haynes v. Runnels*, No. CIV S-05-1100, 2008 WL 2775709, at *6 (July 15, 2008), *magistrate judge's report adopted*, 2008 WL 3850217 (E.D. Cal. Aug. 14, 2008). In light of the nature of the evidence and the readily apparent conflict between petitioner's version of events and the version of events testified to by the prosecution witnesses, the prosecutor's questions did not deprive petitioner of a fair trial. *See United States v. Robinson*, 473 F.3d 387, 396 (1st Cir. 2007); *Coronado*, 2009 WL 2900288, at *11 & n.8; *Morgan v. Renico*, No. 04-CV-74685, 2007 WL 522703, at *6 (E.D. Mich. Feb. 14,

2007) (Tarnow, J.); *United States v. Martin*, 454 F. Supp. 2d 278, 286 (E.D. Pa. 2006). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c.  *Injecting Issues Broader than Guilt*

Petitioner next contends that the prosecutor injected issues broader than guilt or innocence by commenting during closing argument that the jury should think about the fact that the gun recovered from petitioner was loaded, with a bullet in the chamber, suggesting that the case was "this close to a homicide," Trial Tr., dated 3/20/06, at 8, and that Detective Davis made the right decision in returning to the victim's apartment because if he hadn't, "for all we know, couple of minutes go by, this isn't a CSC trial, it's a homicide trial." *Id.* at 35. Even if improper, petitioner cannot show that these comments deprived him of a fair trial. It is clear that the prosecutor was merely speculating as to what might have happened had Davis not arrived at the apartment, and the prosecutor couched the comment in the language of speculation (*e.g.*, "for all we know"). Because these comments were clearly stated as speculations, "[t]he jurors would know that these comments were inferences, and they would not be confused into believing that these comments were factual evidence." *Byrd v. Collins*, 209 F.3d 486, 536 (6th Cir. 2000). Further, the comments did not misstate any of the evidence introduced at trial, and the testimony of the victim and Davis provided strong evidence of petitioner's guilt. In these circumstances, petitioner cannot meet the high burden under *Darden* of showing that the prosecutor's comments deprived him of a fair trial. *See Byrd*, 209 F.3d at 536; *cf. Slagle v. Bagley*, 457 F.3d 501, 525 (6th Cir. 2006) (prosecutor's comment speculating that it was a "good thing" that children in home at time of murder did not wake up because they may have been killed also, although improper, did not (along with 14 other improper comments) render petitioner's trial fundamentally unfair, in part because the particular comment was

22

only minimally prejudicial); *Flood v. Phillips*, 90 Fed. Appx. 108, 120 (6th Cir. 2004) (prosecutor's improper comments regarding petitioner's homosexual tendencies did not deprive petitioner of a fair trial where prosecutor conceded to the jury that he was merely speculating). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d. Vouching and Expressing Personal Belief

Petitioner also contends that the prosecutor improperly vouched for the credibility of the witnesses and expressed a personal belief in petitioner's guilt by making the following argument:

> You are all going to decide this case based not so much on whether the elements are proven, but who you believe, who you believe in this case, and that's what this case boils down to. Do you believe a 10-year veteran of the police force, with an exemplary record, or do you believe a drug dealer who has everything in the world to lose? Do you believe a 23-year old girl who's basically a poster child for domestic violence or do you believe a street thug whose livelihood depends on controlling other people? Do you believe the Defendant's wild conspiracy theory, with absolutely no evidence to back it up, or do you believe Detective Davis was simply following his instincts in preventing a possible homicide?
>
> What is the Defendant's story, and I use the word story intentionally, because that's what it is. It's fictional, it's complete fabrication, that Detective Davis and Jennifer Koutsimbas basically conspired to frame him for this crime.
>
> Now when I thought about what to say about this over the weekend, I got very, very frustrated because his story is so offensive, audacious, insulting, and simply incredulous, it's unbelievable.

Trial Tr., dated 3/20/06, at 15-16. This comment was followed by the prosecutor's discussion of the evidence supporting the prosecution case and the lack of evidence supporting petitioner's version of events. Viewed in context, this comment did not deprive petitioner of a fair trial.

Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550

(6th Cir. 1999); *see also*, *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).[3]  Here, the prosecutor's comments did not place the prestige of the government behind the witness by making personal assurances of a witness's veracity, nor did the prosecutor imply the existence of facts that had not been introduced.  Rather, when the comments are placed in the context of the entire closing argument, the prosecutor did nothing more than argue that petitioner's version of events was not credible because it was unsupported by any evidence, and that the version of events offered by the victim and Davis were supported by the evidence.  Thus, the prosecutor's comments were merely a fair characterization of the evidence presented to the jury based on his summation of that evidence.  As such, they did not constitute impermissible vouching for the credibility of the witnesses or the guilt of petitioner.  *See, e.g.*, *Nichols v. Scott*, 69 F.3d 1255, 1283 (5th Cir. 1995) (comment "is permissible to the extent that it draws a conclusion based solely on the evidence presented.") (internal quotation omitted); *United States v. Grey Bear*, 883 F.2d 1382, 1392 (8th Cir. 1989); *Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Ineffective Assistance of Counsel (Claims I & III)*

        Petitioner next contends that he was denied the effective assistance of trial and appellate counsel in various respects.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

        1.      *Clearly Established Law*

---

[3]Some cases referring to only the first type of comment as "vouching" and describe the second type of comment as "bolstering."  *See Francis*, 170 F.3d at 551.

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland* to claims adjudicated on the merits by the state courts:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.    *Trial Counsel*

Petitioner contends that trial counsel was ineffective for failing to: (1) object to the various instances of prosecutorial misconduct (Claims I(a)-(c)); (2) request a jury instruction on consent (Claim I(d)); and (3) investigate and present various witnesses.  The court should conclude that

petitioner is not entitled to habeas relief on these claims.

### a. Failure to Object to Prosecutorial Misconduct

Petitioner contends that trial counsel was ineffective for failing to object to the instances of prosecutorial misconduct discussed above. This claim is without merit. As explained above, the bulk of the questions or comments petitioner contends were improper were not, in fact, improper, and thus any objection to those questions or comments would have been without merit. It is well established that counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Further, as explained above, any comments that were improper were not sufficiently prejudicial to deprive petitioner of a fair trial. It therefore follows that petitioner was not prejudiced by counsel's failure to object to the comments. *See White v. Withrow*, No. 00-CV-74231, 2001 WL 902624, at *12 (E.D. Mich. June 22, 2001) (Rosen, J.) (citing *United States v. Nwankwo*, 2 F. Supp. 2d 765, 770 (D. Md. 1998)) (no prejudice from counsel's failure to object to prosecutorial misconduct where prosecutor's comments did not deprive petitioner of a fair trial). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Failure to Request Consent Instruction

Petitioner next contends that counsel was ineffective for failing to request an instruction on consent as a defense to the CSC charge. This claim is without merit, for two reasons.

First, the record belies this claim as a factual matter. Specifically, the record reflects that the consent instruction was originally included in the proposed instructions, but was removed by the court at the prosecutor's request and over defense counsel's objection:

27

| | |
|---|---|
| MR. OLIVER: | Your Honor, the prosecutor had advised both the Court and myself that it's his desire to have the consent instruction removed, and of course I won't make his argument for him. |
| MR. WIGOD: | Well, Your Honor, I think the Court agreed, the Defendant's defense is not that it was a consensual act, but that the sexual intercourse never occurred so I don't think consent is an appropriate instruction in this case. |
| MR. OLIVER: | And, Your Honor, my client testified that they had oral sex and that they didn't have sexual intercourse, but that his testimony showed that the oral sex conducted – or that happened at that time was consensual.  For that reason, I would ask that the consent instruction remain in the body of the jury instructions. |
| MR. WIGOD: | Your Honor, that would be a proper argument had we charged the 406 [sic] as a criminal offense, but we did not.  Our information specifically says – |
| THE COURT: | I would agree with you. |
| MR. OLIVER: | All right. |
| THE COURT: | Sustain the objection. |
| MR. OLIVER: | And understanding that, I would simply like to take an exception and preserve it for my client's appeal if necessary. |
| THE COURT: | It is preserved. |

Trial Tr., dated 3/20/06, at 3-4.  Thus, it is clear that counsel requested a consent instruction and objected to the removal of that instruction by the trial court, and that the trial recognized but overruled counsel's objection.  Thus, counsel did not fail to request a consent instruction, and he cannot be deemed ineffective.

Further, petitioner cannot show that counsel was ineffective because, as the trial court ruled, petitioner was not entitled to a consent instruction as a matter of state law.  Although petitioner contended that he and the victim engaged in consensual oral sex, the oral sex act did form the basis

28

of the CSC charge. The information filed by the prosecution explicitly charged only the act of penile-vaginal penetration as the basis for the CSC charge, *see* Answer, Appx. A, and the court instructed the jury that to find petitioner guilty on the CSC charge it had to find that "Defendant engaged in a sexual act that involved entry of into [the victim's] vagina by the Defendant's penis." Trial Tr., dated 3/20/06, at 48. And with respect to this charge, petitioner vehemently denied that any sexual intercourse had occurred. *See id*, dated 3/17/06, at 64-65. Thus, petitioner's defense was not one of consent, but that the act charged simply did not occur. He therefore was not entitled to an instruction on consent as a matter of state law. *See People v. Young*, No. 248646, 2004 WL 2102039, at *2 (Mich. Ct. App. Sept. 21, 2004) (per curiam). Even had counsel failed to request an instruction on consent, he cannot be deemed ineffective for failing to request an instruction which was not appropriate under state law. *See Mitzel v. Tate*, 267 F.3d 524, 538 (6th Cir. 2001).

Finally, petitioner cannot establish prejudice. Petitioner was charged with and convicted of CSC-I on two alternative theories, one of which was that he engaged in an act of sexual penetration through force or coercion. The trial court instructed the jury on the force or coercion element, *see* Trial Tr., dated 3/20/06, at 49, and this "instruction 'implicitly required the jury to find that the complainant did not consent to sexual intercourse before it could find defendant guilty.'" *People v. Matuszak*, 263 Mich. App. 42, 59, 687 N.W.2d 342, 353 (2004) (quoting *People v. Johnson*, 128 Mich. App. 618, 623, 341 N.W.2d 160, 163 (1983)). In light of the force or coercion instruction, the jury could not have found petitioner guilty had it believed the victim consented to the act of sexual penetration. Thus, petitioner cannot show a reasonable probability that the result of the proceeding would have been different had a consent instruction been given.

Because counsel requested an instruction on the defense of consent, and because in any event

such an instruction was not appropriate under state law and petitioner was not prejudiced by the absence of a consent instruction, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Failure to Investigate and Present Witnesses

Petitioner next contends that counsel was ineffective for failing to investigate and call at trial various witnesses. Specifically, he contends that counsel should have called: (1) Officer Rivera, who was at the police station when the victim first came in to file a complaint, who petitioner claims "would have been able to testify as to the 'chance' encounter between the complainant and Detective Davis, how it came about that Davis drove the complainant home, the complainant's physical condition at that time, and why the complainant did not wish to file the domestic violence report," Br. in Supp of Pet., at 20; (2) D.C., the person who petitioner claimed gave a gun to the victim; (3) the neighbor who witnessed Davis placing petitioner under arrest; (4) Lawrence A. Brookings, who apparently would have provided an alibi for petitioner; and (5) Marlina Bell, petitioner's sister. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim, *see United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Here, with respect to the first three

witnesses, petitioner has presented no evidence, through affidavit or otherwise, suggesting that these witnesses could have provided any testimony in support of his defense that the victim and Davis fabricated the charges against him.  Thus, petitioner has failed to meet his burden of demonstrating that counsel was ineffective for failing to call these witnesses.

With respect to the remaining two witnesses, petitioner does provide (undated) affidavits from these witnesses.  These affidavits, however, do not provide any basis for concluding that counsel was ineffective.  First, new statements from witnesses years after the crime are inherently suspect, *see Schlup*, *Schlup v. Delo*, 513 U.S. 298, 314-16 (1996), and such statements are to be viewed with "a degree of skepticism."  *Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring); *see also*, *McCray v. Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007) (citing *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001).  This is particularly true with respect to affidavits from friends and family members, such as those provided by petitioner. *See Chavis-Tucker v. Hudson*, 348 Fed. Appx. 125, 134 (6th Cir. 2009).  More fundamentally, the affidavits do not exculpate petitioner. Brookings avers that on July 21, 2005, the date of the incident, he was with petitioner the entire day, from 12:00 p.m. until 2:00 or 2:30 a.m.  If true, this would contradict the victim's testimony somewhat regarding the time when various events occurred.  However, petitioner himself admitted to being at the apartment that evening (in the early morning hours of July 22) and to engaging in consensual oral sex with the victim.  Thus, even if the testimony were otherwise credible, it would only have somewhat impeached the victim's testimony; it would not have provided affirmative evidence exculpating petitioner.  Likewise, the affidavit of petitioner's sister fails to provide any exculpatory evidence.  She avers that she went to the victim's apartment at 1:00 p.m. to do the victim's hair, but the victim did not show up and she left at 2:30 p.m.  This does not

31

contradict the victim's testimony that the incident first started with a verbal confrontation between petitioner and the victim at around 5:00 p.m. in the apartment.  *See* Trial Tr., dated 3/16/06, at 127. The affidavits, which are to be viewed with suspicion, fail to provide testimony that, if presented, would have created a reasonable probability that the result of the trial would have been different. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

       3.   *Appellate Counsel*

Finally, petitioner contends that appellate counsel was ineffective for failing to properly present, or present at all, his habeas claims on direct review.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

With respect to appellate counsel, it is well established that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).  Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id*.  As a general rule, it is "'only when ignored issues are clearly stronger than those presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id*. (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal. *See id*. at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).  For the reasons explained above, each of petitioner's underlying claims is without merit, and petitioner therefore cannot show that the issues counsel failed to present were clearly stronger than those raised on appeal, or that he

was prejudiced by counsel's failure to raise them.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of

33

probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. As explained above, it is clear under existing law that a prosecutor is permitted to point out the lack of evidence supporting a defendant's version of events. Further, because the prosecutor's questions to petitioner regarding the credibility of other witnesses merely restated what was already apparent to the jury from petitioner's own testimony, petitioner cannot show that the questions deprived him of a fair trial, nor can he establish that the prosecutor impermissibly vouched for the credibility of the witnesses. Thus, the resolution of petitioner's prosecutorial misconduct claims is not reasonably

34

debatable.  Because the resolution of petitioner's underlying prosecutorial misconduct claims is not reasonably debatable, the resolution of petitioner's related ineffective assistance claim based on counsel's failure to object to the prosecutorial misconduct is likewise not reasonably debatable.  As explained above, counsel in fact requested a consent instruction, and in any event such an instruction was not appropriate under state law, and thus the resolution of petitioner's ineffective assistance claim based on counsel's failure to request a consent instruction is not reasonably debatable. Further, because petitioner has presented no evidence regarding the purported testimony of three of the uncalled witnesses, and because the evidence regarding the other two witnesses is skeptically viewed and fails to exculpate petitioner, the resolution of petitioner's ineffective claim based on counsel's failure to investigate and call witnesses is not reasonably debatable.  Finally, because the resolution of petitioner's underlying claims is not reasonably debatable, it follows that the resolution of petitioner's ineffective assistance of appellate counsel claim is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

H.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law, and that petitioner's claims that are subject to *de novo* review fail to establish a constitutional violation.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.   If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.      <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives_____

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:12/13/12

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on December 13, 2012.

s/Eddrey Butts_____
Case Manager